# Matter of M-S-, Respondent

*Decided by Attorney General April 16, 2019*

U.S. Department of Justice
Office of the Attorney General

(1)  Matter of X-K-, 23 I&N Dec. 731 (BIA 2005), was wrongly decided and is overruled.

(2)  An alien who is transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture is ineligible for release on bond.  Such an alien must be detained until his removal proceedings conclude, unless he is granted parole.

## BEFORE THE ATTORNEY GENERAL

The Immigration and Nationality Act ("INA" or "Act") provides for several types of removal proceedings, including "full" proceedings conducted by immigration judges and "expedited" proceedings conducted by the front-line immigration enforcement officers of the Department of Homeland Security ("DHS").  *Lara-Aguilar v. Sessions*, 889 F.3d 134, 137-38 (4th Cir. 2018); INA §§ 235(b)(1), 240, 8 U.S.C. §§ 1225(b)(1), 1229a.  Generally, aliens placed in expedited proceedings must be detained until removed.  INA § 235(b)(1)(B)(iii)(IV).  But some aliens who start in expedited proceedings—namely, those who establish a credible fear of persecution or torture—are transferred to full proceedings.  *Id.* § 235(b)(1)(B)(ii); 8 C.F.R. § 208.30(f).  The question here is whether, under the Act, aliens transferred after establishing a credible fear are eligible for release on bond.[1]

In *Matter of X-K-*, the Board of Immigration Appeals ("Board") held that only some aliens transferred after establishing a credible fear are subject to mandatory detention.  23 I&N Dec. 731, 736 (BIA 2005).  Specifically, the

---

[1]  This opinion does not address whether detaining transferred aliens for the duration of their removal proceedings poses a constitutional problem, a question that Attorney General Sessions did not certify and that is the subject of ongoing litigation.  *See Rodriguez v. Hayes*, No. 2:07-cv-3239 (C.D. Cal.).  For the reasons stated in the Department of Justice's briefs in that case, aliens who have never been admitted into the United States do not have a presumptive constitutional entitlement to be released into the country.  *See* Resp'ts-Appellants' Suppl. Br. 28–40, *Rodriguez v. Marin*, Nos. 13-56706 and 13-56755 (9th Cir. Aug. 10, 2018); Resp'ts-Appellants' Suppl. Reply Br. 20–26, *Rodriguez v. Marin*, Nos. 13-56706 and 13-56755 (9th Cir. Aug. 30, 2018).

Board concluded that "arriving" aliens—such as those "attempting to come into the United States at a port-of-entry," *see* 8 C.F.R. § 1001.1(q)—must be detained, but all other transferred aliens are eligible for bond. 23 I&N Dec. at 736.

*Matter of X-K-* was wrongly decided. The Act provides that, if an alien in expedited proceedings establishes a credible fear, he "shall be detained for further consideration of the application for asylum." INA § 235(b)(1)(B)(ii). The Act further provides that such an alien may be "parole[d] into the United States . . . for urgent humanitarian reasons or significant public benefit." *Id.* § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). There is no way to apply those provisions except as they were written—unless paroled, an alien must be detained until his asylum claim is adjudicated. The Supreme Court recently held exactly that, concluding that section 235(b)(1) "mandate[s] detention throughout the completion of [removal] proceedings" unless the alien is paroled. *Jennings v. Rodriguez*, 138 S. Ct. 830, 844–45 (2018). The Act's implementing regulations support that interpretation.

The respondent here was transferred from expedited to full proceedings after establishing a credible fear, and an immigration judge ordered his release on bond. Because the respondent is ineligible for bond under the Act, I reverse the immigration judge's decision. I order that, unless DHS paroles the respondent under section 212(d)(5)(A) of the Act, he must be detained until his removal proceedings conclude.

## I.

## A.

Under section 235 of the Act, all aliens "arriv[ing] in the United States" or "present in the United States [without having] been admitted" are considered "applicants for admission," who "shall be inspected by immigration officers." INA § 235(a)(1), (3). In most cases, those inspections yield one of three outcomes. First, if an alien is "clearly and beyond a doubt entitled to be admitted," he will be permitted to enter, or remain in, the country without further proceedings. *Id.* § 235(b)(2)(A). Second, if the alien is not clearly admissible, then, generally, he will be placed in "proceeding[s] under section 240" of the Act—that is, full removal proceedings. *Id.* Third, if the alien is inadmissible on one of two specified grounds and meets certain additional criteria, DHS may place him in either expedited or full proceedings. *Id.* § 235(b)(1)(A)(i); *see Matter of E-R-M- & L-R-M-,* 25 I&N Dec. 520, 524 (BIA 2011).

This case concerns aliens subject to expedited removal.  To qualify for expedited removal, an alien must either lack entry documentation or seek admission through fraud or misrepresentation.  INA § 235(b)(1)(A)(i) (referring to *id*. § 212(a)(6)(C), (a)(7)).[2]  In addition, the alien must either be "arriving in the United States" or within a class that the Secretary of Homeland Security ("Secretary") has designated for expedited removal.  *Id*.[3] The Secretary may designate "any or all aliens" who have "not been admitted or paroled into the United States" and also have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."  *Id*. § 235(b)(1)(A)(iii).  To date, the Secretary (and previously the Attorney General) have designated only subsets of that class.  *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68,924 (Nov. 13, 2002); Designating Aliens for Expedited Removal, 69 Fed. Reg. 48,877 (Aug. 11, 2004) ("2004 Designation").  The designated group at issue here encompasses aliens who (i) "are physically present in the U.S. without having been admitted or paroled," (ii) "are encountered by an immigration officer within 100 air miles of any U.S. international land border," and (iii) cannot establish "that they have been physically present in the U.S. continuously for the 14-day period immediately prior to the date of encounter."  2004 Designation, 69 Fed. Reg. at 48,880.

For an alien originally placed in expedited proceedings, the removal process varies depending upon whether the alien indicates either "an intention to apply for asylum" or "a fear of persecution or torture."  8 C.F.R. §§ 235.3(b)(4), 1235.3(b)(4)(1); *see* INA § 235(b)(1)(A)(ii).  If the alien does not so indicate, the inspecting officer "shall order the alien removed from the United States without further hearing or review."  INA § 235(b)(1)(A)(i).  If the alien does so indicate, however, the officer "shall refer the alien for an interview by an asylum officer."  *Id*. § 235(b)(1)(A)(ii).  That officer assesses

---

[2]  Section 235(b)(1)(F) of the Act excepts from expedited removal any "native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry."  For many years, that provision applied to Cuban nationals, but that is no longer the case.  *See Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902, 4904 (Jan. 17, 2017) ("[T]he statutory provision categorically barring the use of expedited removal for certain aliens who arrive by aircraft at a U.S. port of entry no longer applies to Cuban nationals, as the United States and Cuba have reestablished full diplomatic relations.").

[3]  Although the Act refers to the "Attorney General," Congress has since authorized the Secretary to exercise that power.  *See* 6 U.S.C. § 202(3); 8 C.F.R. § 235.3(b)(1)(ii) (2002).

whether the alien has a "credible fear of persecution or torture," 8 C.F.R. § 208.30(d)—in other words, whether there is a "significant possibility" that the alien is eligible for "asylum under section 208 of the Act," "withholding of removal under section 241(b)(3) of the Act," or withholding or deferral of removal under the Convention Against Torture ("CAT"), [4] 8 C.F.R. § 208.30(e)(2)–(3). If the alien does not establish a credible fear, the asylum officer "shall order the alien removed from the United States without further hearing or review." INA § 235(b)(1)(B)(iii)(I). But if the alien does establish such a fear, he is entitled to "further consideration of the application for asylum." *Id*. § 235(b)(1)(B)(ii). [5] By regulation, that "further consideration" takes the form of full removal proceedings under section 240 of the Act. 8 C.F.R. §§ 208.30(f), 1208.30(g)(2)(iv)(B). Thus, if an alien originally placed in expedited removal establishes a credible fear, he receives a full hearing before an immigration judge.

Section 235 of the Act expressly provides for the detention of aliens originally placed in expedited removal. Such aliens "shall be detained pending a final determination of credible fear." INA § 235(b)(1)(B)(iii)(IV). Aliens found not to have a credible fear "shall be detained . . . until removed." *Id*. Aliens found to have such a fear, however, "shall be detained for further consideration of the application for asylum." *Id*. § 235(b)(1)(B)(ii). Like all aliens applying for admission, however, aliens detained for further consideration of an asylum claim may generally be "parole[d] into the United States . . . for urgent humanitarian reasons or significant public benefit." *Id*. § 212(d)(5)(A). Accordingly, the Act's implementing regulations assume that aliens in expedited proceedings will be detained, but provide that, if an alien establishes a credible fear, "[p]arole . . . may be considered . . . in accordance with section 212(d)(5) of the Act and [8 C.F.R.] § 212.5." 8 C.F.R. § 208.30(f).

Section 236 of the Act addresses, more generally, the detention of aliens in removal proceedings. Once an alien has been arrested pursuant to an immigration warrant, DHS "may continue to detain the arrested alien" or "may release the alien on" "bond of at least $1,500" or "conditional parole." INA § 236(a)(1)–(2), 8 U.S.C. § 1226(a)(1)–(2). DHS and Department of

---

[4] Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85.

[5] Under DHS and Department of Justice regulations, "[a]n asylum application shall be deemed to constitute at the same time an application for [statutory] withholding of removal" and CAT relief. 8 C.F.R. §§ 208.3(b), 1208.3(b); *see also id.* §§ 208.16, 1208.16. This opinion employs the regulations' definition of "application for asylum." Relatedly, as used in this opinion, the term "asylum claim" encompasses a claim for asylum, statutory withholding of removal, or CAT relief.

Justice regulations provide that, when reviewing an "initial custody determination" made by DHS, an "immigration judge is authorized to exercise the authority in section 236 of the Act . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in [8 C.F.R.] § 1003.19." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Section 1003.19, in turn, expressly limits the availability of bond for certain enumerated classes of aliens. *Id.* § 1003.19(h)(2)(i). One of those classes is "[a]rriving aliens," *id.* § 1003.19(h)(2)(i)(B), which includes aliens "attempting to come into the United States at a port-of-entry," *id.* § 1001.1(q). But section 1003.19 does not mention the classes of aliens that have been designated for expedited removal.

## B.

Against that statutory and regulatory backdrop, the Board held in *Matter of X-K-* that, except for arriving aliens, all aliens transferred from expedited to full proceedings after establishing a credible fear are eligible for bond. 23 I&N at 736. The Board assumed that the respondent there was covered by the Secretary's 2004 Designation and had been placed in expedited removal. *Id.* at 733 & n.3. After the respondent established a credible fear, DHS had transferred him to full proceedings for further consideration of his asylum claim, and determined that the respondent would be detained for the duration of those proceedings. The respondent appealed that custody determination to an immigration judge, who ordered that the respondent be released on bond. On appeal, DHS argued that aliens originally placed in expedited proceedings were not eligible for bond, even if they were later transferred to full proceedings.

The Board rejected DHS's argument. The Board observed that, with respect to aliens in expedited removal, "[t]he Act provides for . . . mandatory detention . . . '*pending* a final determination of credible fear.'" *Id.* at 734 (quoting INA § 235(b)(1)(B)(iii)(IV)) (emphasis in original). But with respect to detention *after* a credible-fear finding, the Board concluded that "[t]he Act is silent" and "provide[s] no specific guidance." *Id.* In reaching that conclusion, the Board did not mention section 235(b)(1)(B)(ii) of the Act, which expressly provides that an alien found to have a credible fear "shall be detained for further consideration of the application for asylum."

The Board then turned to the Act's implementing regulations. Those regulations, the Board noted, impose a "requirement that aliens who had initially been screened for expedited removal" and then had a "positive credible fear determination" be "placed in full section 240 removal

proceedings." 23 I&N Dec. at 734 (citing, *inter alia*, 8 C.F.R. § 1208.30(f) (2004)). The Board reasoned that immigration judges may "exercise the general custody authority of section 236 of the Act," including the authority to grant bond, "over aliens in section 240 removal proceedings." *Id.* (citing, *inter alia*, 8 C.F.R. § 1236.1(c)(11), (d)). The only exceptions are for "specified classes of aliens . . . specifically excluded from the custody jurisdiction of Immigration Judges by 8 C.F.R. § 1003.19(h)(2)(i)(B)." *Id.* at 735. That regulation expressly excludes "arriving aliens," but does not mention aliens who have been designated for expedited removal. *Id.* Drawing a negative inference from the regulation, the Board concluded that arriving aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond, but that all other aliens so transferred are eligible. *Id.*

C.

The respondent here is a citizen of India. He traveled to Mexico and crossed illegally into the United States. He was apprehended within hours about 50 miles north of the border. DHS placed him in expedited removal proceedings.

After the respondent claimed a fear of persecution in India, DHS referred him for an asylum interview. The asylum officer determined that the respondent lacked a credible fear, but, at the respondent's request, DHS reconsidered and reversed its determination. DHS then transferred the respondent to full proceedings. Upon his transfer, DHS issued the respondent a Notice to Appear (DHS Form I-862) and a Notice of Custody Determination (DHS Form I-286), the latter of which informed the respondent that, "pending a final administrative determination in your case, you will be . . . [d]etained by the Department of Homeland Security."

The respondent requested that an immigration judge review that custody determination. Without mentioning section 235(b)(1)(B)(ii), the immigration judge held that the respondent "is not subject to mandatory detention." *Matter of M-S-*, Order on Motion for Custody Redetermination at 2 (Immig. Ct. July 18, 2018). The immigration judge ordered that the respondent be released if he could produce a valid Indian passport and post a bond of $17,500. *Id.* at 3. The respondent appealed to the Board, arguing that his bond should be reduced.

While that appeal was pending, the respondent again requested immigration-judge review of his custody, as permitted by regulation. *See* 8 C.F.R. § 1003.19(e). The respondent argued that, because the Indian consulate had denied his request for a replacement passport, he should not be required to produce one. A different immigration judge agreed, but increased

the respondent's bond to $27,000.  *Matter of M-S-*, Order on Motion for Custody Redetermination at 2 (Immig. Ct. Sept. 17, 2018).  The respondent posted that amount and was released on September 27, 2018.  The Board, apparently unaware of that development, decided the respondent's appeal the next day, affirming the first immigration judge's bond order.  *Matter of M-S-*, slip. op. at 1 (BIA Sept. 28, 2018).  Neither the respondent nor DHS appealed the second immigration judge's order. [6]   The respondent's case remains pending.

## II.

The question presented is whether aliens who are originally placed in expedited proceedings and then transferred to full proceedings after establishing a credible fear become eligible for bond upon transfer.  I conclude that such aliens remain ineligible for bond, whether they are arriving at the border or are apprehended in the United States.

The text of the Act mandates that conclusion.  Section 235(b)(1)(B)(ii) provides that, if an alien in expedited proceedings establishes a credible fear, he "shall be detained for further consideration of the application for asylum."  "The word 'shall' generally imposes a nondiscretionary duty."  *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018).  And the word "for" often means "with the object or purpose of" or "throughout."  6 Oxford English Dictionary 23, 26 (2d ed. 1989).  Granted, "for" can also mean "in preparation for or anticipation of."  *Id*. at 24.  But that latter definition makes little sense in light of surrounding provisions of the Act.  *See, e.g., Rodriguez*, 138 S. Ct. at 844–45 (recognizing that defining "for" to mean "until the start of" "makes [no] sense in the context of the statutory scheme as a whole" (emphasis in original)).  If section 235(b)(1)(B)(ii) governed detention only "in preparation for"—that is, until the beginning of—full proceedings, then another provision, section 236, would govern detention during those proceedings.  Section 236, however, permits detention only on an arrest warrant issued by the Secretary.  INA § 236(a).  The result would be that, if an alien were placed in expedited proceedings, DHS could detain him

---

[6]  All three decisions below—both bond orders and the Board's decision—pose the same threshold, legal question: whether the respondent became eligible for bond after establishing a credible fear and being transferred to full proceedings.  I certified this case to answer that question, and I have authority to answer it by reviewing either the Board's decision or the second bond order.  *See* 8 U.S.C. § 1103(g)(2) (authorizing the Attorney General to "review such administrative determinations in immigration proceedings . . . as [he] determines to be necessary for carrying out" the Act).  My decision therefore has the effect of reversing the second bond order.

without a warrant, but, if the alien were then transferred to full proceedings, DHS would need to issue an arrest warrant to continue detention. That simply cannot be what the Act requires. Instead, I read section 235(b)(1)(B)(ii) to mandate detention (i) for the purpose of ensuring additional review of an asylum claim, and (ii) for so long as that review is ongoing. In other words, section 235(b)(1)(B)(ii) requires detention until removal proceedings conclude.

Several amici would read section 236 of the Act to render transferred aliens eligible for bond. That section provides that, once an alien is arrested pursuant to an immigration warrant, DHS "may continue to detain the arrested alien" or "may release [him] on" "bond of at least $1,500" or "conditional parole," unless he has committed certain crimes. INA § 236(a)(1)–(2), (c). The amici therefore read section 236 to render all non-criminal aliens eligible for bond. Yet section 235 (under which detention is mandatory) and section 236(a) (under which detention is permissive) can be reconciled only if they apply to different classes of aliens. *See Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1081 (9th Cir. 2015) (concluding that "permissive and mandatory [provisions] are in harmony, as they apply to different situations"). For purposes of the respondent's case, I need not identify the full universe of aliens covered by section 236(a). It suffices to find that section 236(a) provides an independent ground for detention that does not limit DHS's separate authority to detain aliens originally placed in expedited removal, who, after the credible-fear stage, "shall be detained" either for further adjudication of their asylum claims or for removal. *See* INA § 235(b)(1)(B)(ii) (an alien placed in expedited removal who demonstrates a credible fear "shall be detained for further consideration of the application for asylum"); *id.* § 235(b)(1)(B)(iii)(IV) (an alien placed in expedited removal who does not demonstrate a credible fear "shall be detained . . . until removed"). I do not read section 236(a) to authorize granting bond to aliens originally placed in expedited proceedings, even if they are later transferred to full proceedings after establishing a credible fear.

The conclusion that section 235 requires detention does not mean that every transferred alien must be detained from the moment of apprehension until the completion of removal proceedings. Section 212(d)(5)(A) of the Act separately provides that "any alien applying for admission" may be "parole[d] into the United States . . . for urgent humanitarian reasons or significant public benefit." Aliens with "serious medical conditions," for example, are generally eligible for parole. 8 C.F.R. § 212.5(b)(1). An alien's term of parole expires "when the purposes of such parole . . . have been served," at which point the alien must "return or be returned to . . . custody."

INA § 212(d)(5)(A). This provision grants the Secretary the discretion to parole aliens under its terms.

In light of that express exception to mandatory detention, the Act cannot be read to contain an implicit exception for bond. Under the negative-implication canon, "expressing one item of [an] associated group or series excludes another left unmentioned." *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (alteration in original). Section 212(d)(5)(A) expressly states that aliens applying for admission—which includes aliens originally placed in expedited proceedings—may be released on parole. That suggests that those aliens may not be released on bond. And that suggestion is particularly strong here given that the Act expressly provides that aliens in the separate class covered by section 236(a) are eligible for both "bond of at least $1,500" *and* "conditional parole." INA § 236(a)(2)(A)–(B). *See, e.g., Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("We have often noted that when Congress includes particular language in one section of a statute but omits it in another—let alone in the very next provision—this Court presume[s] that Congress intended a difference in meaning." (alteration in original) (internal quotation marks omitted)).

The Supreme Court recently interpreted the Act in the exact same way. In *Jennings v. Rodriguez*, a class of aliens in removal proceedings—including aliens transferred from expedited to full proceedings after establishing a credible fear—argued that the Act did not permit their "prolonged detention in the absence of . . . individualized bond hearing[s]." 138 S. Ct. at 839 (internal quotation marks omitted). The class acknowledged that section 235(b)(1)(B)(ii) provides that a transferred alien "shall be detained for further consideration of the application for asylum." The class argued, however, that "the term 'for' . . . mandates detention only until the *start* of [full] proceedings." *Id.* at 844 (emphasis in original). Once those proceedings begin, the class continued, section 236 applies, under which transferred aliens are generally eligible for bond and thus entitled to bond hearings. *Id.* at 845. The Court rejected that argument as "incompatible with the rest of the statute." *Id.* If the class were right about when sections 235 and 236 apply, "then the Government could detain an alien without a warrant at the border, but once removal proceedings began, the [Secretary] would have to issue an arrest warrant in order to continue detaining the alien." *Id.* But "that makes little sense." *Id.* In evaluating whether transferred aliens are eligible for bond, the Court also considered section 212(d)(5)(A)'s parole exception. "That express exception to detention," the Court reasoned, "implies that there are no *other* circumstances under which aliens detained under [section 235(b)] may be released." *Id.* at 844 (emphasis in original). For those reasons, the *Rodriguez* Court held, as I do here, that

the Act renders aliens transferred from expedited to full proceedings after establishing a credible fear ineligible for bond.

Although *Rodriguez* did not address the Act's implementing regulations, those regulations support the conclusion that transferred aliens are ineligible for bond. First, 8 C.F.R. § 208.30(f) provides that, if an alien is either a "stowaway" or in expedited proceedings, and he establishes a credible fear, he must be transferred to, respectively, "proceedings under [8 C.F.R.] § 208.2(c)" or full removal proceedings. In either case, after the transfer, "[p]arole of the alien may be considered only in accordance with section 212(d)(5) of the Act and [8 C.F.R.] § 212.5." 8 C.F.R. § 208.30(f). The regulation makes no mention of bond.

In *Matter of X-K-*, the Board drew a negative inference based upon 8 C.F.R. § 1003.19's expressly rendering "arriving aliens" ineligible for bond but not addressing other categories of aliens who are subject to expedited removal. 23 I&N Dec. at 734–35. But as explained above, the Board did not discuss section 235's detention requirement at all and therefore overlooked the implications that provision has upon the appropriate interpretation of section 236. Section 1003.19(h)(2)(i) thus does not provide an exhaustive catalogue of the classes of aliens who are ineligible for bond. The Secretary recognized that very point in designating the class at issue here. The Secretary explained that, "[u]nder Department of Justice regulations, immigration judge review . . . is permitted only for bond and custody determinations pursuant to section 236." 69 Fed. Reg. at 48,879. And "[a]liens subject to expedited removal procedures . . . (including those aliens who are referred after a positive credible fear determination . . . for proceedings under section 240 of the Act)" are covered by section 235, not section 236. *Id.* Thus, the Secretary concluded, even without adding the designated aliens to section 1003.19's list of bond-ineligible classes, the designated aliens "are not eligible for bond [or] for a bond redetermination hearing before an immigration judge." *Id.* I agree with that interpretation, which ensures that the regulation remains consistent with the statute. [7]

In conclusion, the statutory text, the implementing regulations, and the Supreme Court's decision in *Rodriguez* all lead to the same conclusion: that

---

[7] In *Matter of X-K-*, the Board never suggested that, if an alien designated for expedited removal established a credible fear, then DHS could terminate his expedited proceedings and initiate full ones, thereby rendering him eligible for bond. And for good reason: DHS's authority under *Matter of E-R-M- & L-R-M-* expires once an asylum officer (or immigration judge) makes a final credible-fear determination, at which point the alien "shall be detained" either for further adjudication of his asylum claim or for removal. INA § 235(b)(1)(B)(ii), (b)(1)(B)(iii)(IV).

all aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond. *Matter of X-K-* is therefore overruled. [8]

## III.

Here, despite the respondent being bond ineligible, the second immigration judge ordered DHS to release him on a bond of $27,000. The respondent posted that bond in September 2018, and was released from custody. I reverse the order granting bond to the respondent. I order that, unless DHS paroles the respondent under section 212(d)(5)(A) of the Act, he must be detained until his removal proceedings conclude.

---

[8] Because *Matter of X-K-* declared a sizable population of aliens to be eligible for bond, DHS indicates that my overruling that decision will have "an immediate and significant impact on [its] detention operations." DHS Br. 23 n.16. DHS accordingly requests that I delay the effective date of this decision "so that DHS may conduct necessary operational planning." *Id.* Federal circuit courts have discretion to delay the effective dates of their decisions, *see* Fed. R. App. P. 41(b), and I conclude that I have similar discretion. I will delay the effective date of this decision for 90 days so that DHS may conduct the necessary operational planning for additional detention and parole decisions.